[Cite as *Burns v. Fodor*, 2026-Ohio-2622.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Donna Burns et al., | : | |
| Plaintiffs-Appellants, | : | No. 26AP-5 |
| | | (Prob. No. 613391A) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| David Fodor et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on July 9, 2026

**On brief:** *Braden Blumenstiel Legal Advocates Group*, and *Braden A. Blumenstiel* for appellants.

**On brief:** *Carlile Patchen & Murphy LLP*, *Bryan M. Pritikin*, and *Grace E. Dunn*, for appellees.

APPEAL from the Franklin County Probate Court

EDELSTEIN, J.

{¶ 1} Plaintiffs-appellants, Donna Burns, Joseph Beatty, Sally Fodor, Alex Fodor, Anna Marie Backenstoe, Sherry Hagans, Jim Fodor, David Beatty, Tina Farris, and Steve Beatty, appeal from a judgment entry of the Franklin County Probate Court overruling their objections and adopting the magistrate's decision granting the motion for summary judgment of defendants-appellees, Jeanne Fodor and Shelba Woods. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2}  Appellants and appellees are relatives and friends of Naomi Fodor.  David Fodor[1] was Naomi's brother-in-law, the trustee of the Fodor Family Trust, and executor of Naomi's estate.  Jeanne Fodor was married to David Fodor.  Shelba Woods was a friend of Naomi's.  Appellants are the biological children of Al Fodor, Joe Fodor, and Mary Beatty and were Naomi's nieces and nephews.  Al Fodor, Joe Fodor, and Mary Beatty are all deceased.

{¶ 3}  In 2001, Naomi executed the Fodor Family Trust, dividing her trust estate into two separate funds, one for individual beneficiaries and one for institutional beneficiaries.  The Fodor Family Trust directed the assets in the first fund to be transferred, upon Naomi's death, to the following individual beneficiaries in equal shares per stirpes: Joe Fodor, David Fodor, Mary Beatty, Eulon Fodor, Barbara Fodor, Ernestine Farber, Shelba Wood, Harley and Rosa Starcher, and the children of Al Fodor.  Additionally, the Fodor Family Trust directed the assets in the second fund to be transferred, upon Naomi's death, to the New Albany United Methodist Church, the New Albany Plain Township Historical Society, the New Albany Community Foundation, and the New Albany/Plain Local School District.  Naomi amended the trust four times from its initial creation until her November 2019 death.  (Compl. Ex. 1.)  Each of the first three amendments to the trust maintained the two-fund format and included among the named beneficiaries Joe Fodor and/or his spouse and surviving children, Mary Beatty, and the children of Al Fodor.  (Compl. Ex. 1.)  On June 3, 2019, when she was 96 years old, Naomi executed the Fourth Amendment to the Fodor Family Trust eliminating the two-fund distribution format and directing "the Trust Estate in equal shares" be transferred to only three named beneficiaries: David Fodor, Shelba Wood, and Jeanne Fodor.  (Compl. Ex. 1.)  Naomi died on November 11, 2019.

{¶ 4}  On November 12, 2021, appellants filed a complaint against David Fodor, Jeanne Fodor, and Shelba Wood asserting a claim of undue influence related to Naomi's Fourth Amendment of the Fodor Family Trust.  Appellants alleged they would have

---

[1] David Fodor was one of the three parties named as defendants in the complaint. He died on July 27, 2022, after appellants filed their complaint, but before appellees filed their motion for summary judgment. (*See* Oct. 19, 2022 Notice of Suggestion of Death.)

remained beneficiaries to the Fodor Family Trust had appellees not improperly influenced Naomi into executing the Fourth Amendment. The complaint additionally challenged certain inter vivos transfers Naomi made prior to her death, which are not at issue in this appeal.

{¶ 5} David Fodor died after appellants filed their complaint. Subsequently, on June 3, 2024, Jeanne Fodor and Shelba Wood filed a motion for summary judgment, followed by an amended motion for summary judgment on November 12, 2024. Appellees argued there was no genuine issue of material fact related to appellants' claim of undue influence and they were entitled to judgment as a matter of law. In support of their motion, appellees relied on affidavits from Russell W. Kessler, Kimberly Kish, Thomas F. Vorisek, Jeanne Fodor, Shelba Wood, and David Fodor made prior to his death.

{¶ 6} Mr. Kessler averred he served as Naomi's estate planning attorney for approximately 30 years, beginning in the late 1990s until the time of her death in 2019. (Kessler Aff. at ¶ 4.) Mr. Kessler stated Naomi contacted him in January 2019 about modifying the trust and, after several conversations with her about the modifications, Naomi executed the Fourth Amendment, which Mr. Kessler drafted, on June 3, 2019. (Kessler Aff. at ¶ 5-6.) Mr. Kessler averred he personally met with Naomi, reviewed the Fourth Amendment language with her, and watched her execute it in his presence and the presence of his legal assistant, Ms. Kish. (Kessler Aff. at ¶ 6.) Mr. Kessler described Naomi as "alert, oriented, lucid, and of sound mind" when executing the Fourth Amendment. (Kessler Aff. at ¶ 7.) He further stated he never discussed the amendment or any issues related to Naomi's estate plan with appellees prior to June 3, 2019. (Kessler Aff. at ¶ 9.)

{¶ 7} Ms. Kish's affidavit stated she and Mr. Kessler met with Naomi on June 3, 2019 when Naomi executed the Fourth Amendment. (Kish Aff. at ¶ 4.) Ms. Kish averred no other person was present during the meeting and described Naomi as "alert, oriented, lucid and of sound mind." (Kish Aff. at ¶ 5.) Ms. Kish stated she never discussed Naomi's estate plan or any issues related to the Fourth Amendment with appellees prior to June 3, 2019. (Kish Aff. at ¶ 8.)

{¶ 8} Mr. Vorisek served as Naomi's financial advisor for approximately 30 years. (Vorisek Aff. at ¶ 4.) Mr. Vorisek averred he contacted Naomi in early January 2019 to schedule a regular review of her finances. (Vorisek Aff. at ¶ 5.) When he met with Naomi

at her residence on January 7, 2019, Mr. Vorisek described Naomi as "alert, oriented and of sound mental capacity," noting she had a firm understanding of her finances. (Vorisek Aff. at ¶ 7.) He stated Naomi expressed frustration during the meeting that one of her nephews, David Beatty, had failed to repay a $50,000 loan she made to him. (Vorisek Aff. at ¶ 10.) Mr. Vorisek additionally averred Naomi indicated she wanted to meet with her attorney about modifying her trust. (Vorisek Aff. at ¶ 11.) He stated he never discussed Naomi's finances or investments with appellees. (Vorisek Aff. at ¶ 12.)

{¶ 9} David Fodor, Jeanne Fodor, and Shelba Wood each averred in their own affidavits that they never discussed the Fourth Amendment with Naomi prior to its June 3, 2019 execution. (David Fodor Aff. at ¶ 4; Jeanne Fodor Aff. at ¶ 4; Shelba Wood Aff. at ¶ 4.) They stated they did not encourage Naomi to execute the amendment or otherwise change the beneficiaries to the trust. (David Fodor Aff. at ¶ 5; Jeanne Fodor Aff. at ¶ 5; Shelba Wood Aff. at ¶ 5.)

{¶ 10} On December 4, 2024, appellants filed a memorandum in opposition to the amended motion for summary judgment arguing there remained a genuine issue of material fact as to whether appellees exerted undue influence over Naomi when she executed the Fourth Amendment to the trust. Several of the individual appellants submitted affidavits in opposition to the motion for summary judgment.[2]

{¶ 11} Ms. Andrews filed an affidavit stating Naomi had expressed frustration with David Fodor when he assisted Naomi with her financial and legal matters. She additionally stated she saw a handwritten note stating Naomi "wants to reverse: I. She wants to remove b, c, d, g, h. Leaving in: a, e, and f. Also wants to remove II. Items a, b, c." (Andrews Aff. at ¶ 22-27.) Ms. Andrews averred she was familiar with Jeanne Fodor's handwriting and believed Jeanne had written the note. (Andrews Aff. at ¶ 22-27.) Ms. Andrews stated this handwritten note was in Mr. Kessler's possession. Appellants filed a copy of the handwritten note with their memorandum opposing summary judgment.

---

[2] While not related to appellants' arguments on appeal, we note that, in addition to their individual affidavits, appellants submitted a document stating Naomi had dementia. After appellees filed their response to appellants' memorandum contra, appellants filed an affidavit from their attorney indicating the previously filed document was a medical record obtained from Naomi's assisted living facility. Additionally, appellants separately filed a certification, not attached to any records, from the records custodian of the appellants' attorney, purporting to authenticate Naomi's medical records.

{¶ 12} David Beatty averred in his affidavit Naomi experienced instances of confusion during the final years of her life, including confusing him with David Fodor. (David Beatty Aff. at ¶ 11.) He stated Naomi sometimes expressed frustration with David Fodor as he became more involved in handling her affairs. David Beatty stated Naomi openly discussed wanting to leave the trust assets to her more extended family, including the nieces and nephews who were removed as beneficiaries in the Fourth Amendment.

{¶ 13} Jim Fodor submitted an affidavit stating Naomi became forgetful in the last few years of her life and relied on David Fodor for many things. (Jim Fodor Aff. at ¶ 6-15.) Jim stated both Jeanne and David Fodor would tell Naomi what to do and she followed their advice but would also complain about David. (Jim Fodor Aff. at ¶ 16-17.) Jim stated Naomi frequently told him she wanted her trust assets to go to her family members, the church, and the historical society. (Jim Fodor Aff. at ¶ 30.)

{¶ 14} Ms. Burns stated in her affidavit that Naomi demonstrated cognitive confusion and forgetfulness during the final years of her life. (Burns Aff. at ¶ 20.) She averred Naomi did not trust David Fodor and expressed frustration with David's handling of her affairs. (Burns Aff. at ¶ 25-28.) Ms. Burns stated Naomi told her she wished to treat her family members equally and never spoke of wanting to change her estate plan. (Burns Aff. at ¶ 37.) Additionally, she stated David Fodor pressured Naomi to handle her property in a manner that benefited David Fodor's children. (Burns Aff. at ¶ 38.) Her affidavit stated David was concerned about his own financial security due to his excessive medical expenses. (Burns Aff. at ¶ 17.)

{¶ 15} Steve Beatty averred in his affidavit that Naomi's short-term memory worsened in 2018 and 2019. (Steve Beatty Aff. at ¶ 10.) He stated David Fodor acted as power of attorney for Naomi and co-owner of her bank account. He said she was frustrated with David and claimed he stole things from her house on a number of occasions. (Steve Beatty Aff. at ¶ 23-30.) He also stated Naomi told him she wanted her assets to go to her nieces, nephews, and siblings. (Steve Beatty Aff. at ¶ 31.)

{¶ 16} The parties also relied on Mr. Kessler's deposition testimony in their opposition to summary judgment. In his deposition, Mr. Kessler testified Naomi was "not happy . . . to some degree" with her nieces and nephews, specifically describing her frustration with David Beatty for his failure to repay a loan. (Kessler Dep. at 37.) Mr.

Kessler testified he did not ask Naomi to elaborate on why she wanted to exclude certain people as beneficiaries in the Fourth Amendment. (Kessler Dep. at 85.) As to Naomi's decision to remove specific charities from the named beneficiaries, Mr. Kessler testified Naomi told him she felt she had contributed enough to the charities during her lifetime and through her charitable remainder trust. (Kessler Dep. at 38.) Mr. Kessler testified that David and Jeanne Fodor may have driven Naomi to his office on occasion, but they never attended the meetings he had with Naomi. (Kessler Dep. at 39.) Mr. Kessler testified he never perceived Naomi's cognitive health to be impaired, describing her as "very self-assured, had her opinions, and they were her opinions. You really weren't going to change them." (Kessler Dep. at 47, 118.) He testified Naomi was cognitively capable of understanding the Fourth Amendment when she executed it, and he stated Naomi was not being influenced by others when she executed it. (Kessler Dep. at 120-21.)

{¶ 17} On August 7, 2025, the magistrate issued a decision recommending the trial court grant appellees' motion for summary judgment. The magistrate determined Mr. Kessler, Naomi's estate planning attorney, "provided unrefuted evidence that, while David Fodor and Jeanne Fodor may have taken Naomi Fodor to her estate planning appointments, David Fodor and Jeanne Fodor stayed out of [the] room where [Mr. Kessler] met with Naomi," and, "[a]s such, David Fodor and Jeanne Fodor had no occasion to interfere and unduly influence the actual estate planning meetings between Naomi Fodor and [Mr. Kessler]." (Mag.'s Decision at 12.) The magistrate determined the appellants' affidavits amounted only to speculation that Naomi was under undue influence when she executed the Fourth Amendment. (Mag.'s Decision at 13.) Additionally, the magistrate determined David Fodor and Jeanne Fodor rebutted any presumption of undue influence stemming from their confidential and fiduciary relationship with Naomi through the affidavits of Mr. Kessler, Ms. Kish, and Mr. Vorisek, who each verified Naomi's testamentary capacity. (Mag.'s Decision at 18.) The magistrate determined appellants failed to provide Civ.R. 56 evidence establishing the existence of a genuine issue of material fact that appellees actually exerted or attempted to exert undue influence over Naomi when she executed the Fourth Amendment to the trust. (Mag.'s Decision at 19.) The magistrate also determined appellants failed to present any factual allegations in support of their challenge to Naomi's inter vivos transfers. (Mag.'s Decision at 20.)

{¶ 18} Appellants filed objections to the magistrate's decision. In a November 14, 2025 judgment entry, the trial court overruled appellants' objections and adopted the magistrate's decision as its own, granting appellees' motion for summary judgment. Appellants timely appeal.

## II. Assignment of Error

{¶ 19} Appellants raise the following sole assignment of error for our review:

> The Trial Court erred in granting defendants' Motion for Summary Judgment.

## III. Standard of Review

{¶ 20} An appellate court reviews a trial court's grant of summary judgment under a de novo standard. *Estate of Sample v. Xenos Christian Fellowship, Inc.*, 2021-Ohio-3898, ¶ 9 (10th Dist.). "[D]e novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision." (Internal quotations and citations omitted.) *Holt v. State*, 2010-Ohio-6529, ¶ 9 (10th Dist.). Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 21} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the summary judgment motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996). The moving party cannot discharge its initial burden with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429-30 (1997). If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment. *Dresher* at 293. Where the moving party satisfies the initial burden, summary

judgment is appropriate unless the nonmoving party responds, by affidavit or otherwise, as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Id.*; *Hall v. Ohio State Univ. College of Humanities*, 2012-Ohio-5036, ¶ 12 (10th Dist.); Civ.R. 56(E).

## IV. Analysis

{¶ 22} In their sole assignment of error, appellants argue the trial court erred in granting appellees' motion for summary judgment concerning their challenge to the Fourth Amendment based on undue influence. More specifically, appellants assert the trial court erroneously weighed the evidence and failed to view the evidence in a light most favorable to appellants when it ruled on the motion for summary judgment.

{¶ 23} In an action claiming undue influence, the pertinent question "is whether undue influence manifested a result different than would have been reached absent the undue influence." *Redman v. Watch Tower Bible & Tract Soc.*, 69 Ohio St.3d 98, 102 (1994), citing *West v. Henry*, 173 Ohio St. 498, 510-11 (1962). To successfully challenge a testamentary instrument based on undue influence, the contestant of the testamentary instrument must demonstrate each of the following four elements: " '(1) a susceptible testator, (2) another's opportunity to exert influence on the testator, (3) the fact that improper influence was exerted or attempted, and (4) a result showing the effect of the improper influence.' " *Martin v. Dew*, 2004-Ohio-2520, ¶ 11 (10th Dist.), quoting *Boley v. Kennedy*, 2003-Ohio-1663, ¶ 21 (3d Dist.); *Meehan v. Meehan*, 2023-Ohio-2772, ¶ 37 (8th Dist.) (noting "R.C. 5804.06 specifically adopts the undue influence standards from will-contest actions for the purposes of determining the validity of a trust"). Because it is dispositive, our analysis focuses on the third element: the exertion or attempted exertion of improper influence.

{¶ 24} Under Ohio law, undue influence over the maker of a testamentary instrument " 'must so overpower and subjugate the mind of [that person] as to destroy his free agency and make him express another's will rather than his own.' " *Martin* at ¶ 23, quoting *Adams v. Woollard*, 1995 Ohio App. LEXIS 1711, *20 (6th Dist. Apr. 28, 1995). General influence, even if strong and controlling, is not undue influence unless it is exerted directly on the act of making the testamentary instrument. *Id.* at ¶ 22, quoting *West* at 501.

{¶ 25} The trial court determined appellees established, through Civ.R. 56 evidence, that they did not exert or attempt to exert any undue influence on Naomi's act of making the Fourth Amendment to the trust and appellants failed to introduce any Civ.R. 56 evidence demonstrating a genuine issue of material fact remains on this issue. We agree. David Fodor, Jeanne Fodor, and Shelba Wood all averred they neither discussed the Fourth Amendment of the Fodor Family Trust with Naomi prior to its June 3, 2019 execution nor encouraged Naomi to execute the amendment or otherwise change the beneficiaries to the trust. (David Fodor Aff. at ¶ 4-5; Jeanne Fodor Aff. at ¶ 4-5; Shelba Wood Aff. at ¶ 4-5.) Both Mr. Vorisek, Naomi's financial advisor, and Mr. Kessler, Naomi's attorney, averred Naomi independently communicated her desire to amend the trust. (Vorisek Aff. at ¶ 11; Kessler Aff. at ¶ 5.) Mr. Kessler had several conversations with Naomi over a period of five months related to the drafting and execution of the Fourth Amendment, and Mr. Kessler stated in his affidavit he never discussed the Fourth Amendment with appellees. (Kessler Aff. at ¶ 5, 9.) This evidence satisfied appellees' initial burden as the party moving for summary judgment under Civ.R. 56.

{¶ 26} Appellants attempted to create a genuine issue of material fact on the exertion of undue influence issue by introducing evidence related to the nature of David Fodor's relationship with Naomi in the final years of her life, including evidence showing David and Jeanne would drive Naomi to appointments with Mr. Kessler. They also submitted affidavits noting David Fodor took an active role in handling Naomi's finances and had been designated her power of attorney. However, the existence of a close relationship between the decedent and the beneficiary is not enough to demonstrate undue influence. *Martin* at ¶ 23, quoting *Adams* at *20 ("anyone who desires to draft a will is 'influenced' to a certain extent by relationships with friends, family, social and religious groups, and many other environmental factors"). At most, this evidence from appellants creates speculation that appellees had the ***opportunity*** to exert influence—a separate element of the undue influence test—but it does not create a genuine issue of material fact as to whether appellees ***actually*** exerted or attempted to exert undue influence over Naomi's execution of the Fourth Amendment to the trust. *Id.* at ¶ 22, quoting *West*, 173 Ohio St. at 501 (" 'the mere existence of undue influence, or an opportunity to exercise it, although coupled with an interest or motive to do so, is not sufficient, but such influence

must be actually exerted on the mind of the testator with respect to the execution of the [testamentary instrument] in question'"). Though appellants introduced evidence showing appellees were actively involved in Naomi's life at the time she executed the Fourth Amendment to the trust, they did not point to any Civ.R. 56 evidence suggesting David Fodor, Jeanne Fodor, or Shelba Wood actually exerted or attempted to exert undue influence on Naomi's decision to amend the trust.

{¶ 27} Appellants assert the trial court erroneously discounted the handwritten note that was in Mr. Kessler's file. The note states: "Naomi wants to reverse: I. She wants to remove b, c, d, g, h. Leaving in: a, e, and f. Also wants to remove II. Items a, b, c." (Andrews Aff. at ¶ 22-27.) The note is not dated and does not include a signatory, but appellants rely on Ms. Andrews' affidavit averring it must have been written by Jeanne because it matched her handwriting. (Andrews Aff. at ¶ 26.) Appellants argue this note creates an issue of fact as to whether appellees exerted undue influence on Naomi with respect to the Fourth Amendment. And, as appellants note, it is not the role of the trial court at the summary judgment stage to weigh the evidence and make findings of fact. *Smathers v. Glass*, 2022-Ohio-4595, ¶ 32, citing *Wills v. Frank Hoover Supply*, 26 Ohio St.3d 186, 188 (1986) ("determining whether issues of disputed fact exist is different from making findings of fact," and "on a summary-judgment motion, any inferences regarding the evidence, including the resolution of ambiguities or inconsistencies, must be made in a manner that favors the nonmoving party").

{¶ 28} Even construing the evidence in appellants' favor and assuming Jeanne authored the note, we find the note does not create a genuine issue of material fact regarding the actual or attempted exertion of undue influence. On its face, the note purports to convey Naomi's wishes, beginning with the phrase "Naomi wants." (Andrews Aff., Exhibit 1.) Nothing in the note suggests coercion, manipulation, pressure, or an attempt to substitute appellees' wishes for Naomi's. At most, the note supports an inference that Jeanne communicated Naomi's preferences to Mr. Kessler. But evidence that Jeanne conveyed Naomi's wishes to counsel is not, without more, evidence that appellees overbore Naomi's free agency. Moreover, Mr. Kessler testified he did not rely on the note and instead drafted the Fourth Amendment based on his own conversations with Naomi, ensuring the terms of the amendment reflected Naomi's expressed wishes. (Kessler Dep. at 59-61.) To

treat the note as evidence of undue influence would therefore require speculation unsupported by any established fact: we would have to infer not merely that Jeanne communicated with Mr. Kessler about the amendment but that Naomi's expressed wishes were not actually her own and instead resulted from coercion sufficient to overcome her independent judgment. We would then have to further infer the alleged coercion affected the contents and execution of the Fourth Amendment notwithstanding Mr. Kessler's independent consultations with Naomi. Ohio law does not permit a party opposing summary judgment to create a factual dispute through such speculative inference-stacking. *Mercer v. Wal-Mart Stores, Inc.*, 2013-Ohio-5607, ¶ 20 (10th Dist.), citing *Currie v. Big Fat Greek Restaurant, Inc.*, 2012-Ohio-6168, ¶ 18 (10th Dist.) ("[i]t is impermissible to draw an inference from a deduction that is itself purely speculative and unsupported by an established fact, and a plaintiff cannot create a genuine issue of fact by stacking inference upon inference"). "After a proper motion for summary judgment is made, 'the nonmoving party must do more than supply evidence of a possible inference that a material issue of fact exists; it must produce evidence of specific facts which establish the existence of an issue of material fact.' " *Id.*, quoting *Carrier v. Weisheimer Cos., Inc.*, 1996 Ohio App. LEXIS 617, *17 (10th Dist. Feb. 22, 1996); *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108 (1991). As with the rest of the evidence appellants relied on, the note is, at most, speculative of possible opportunity to exert undue influence, but it does not create a genuine issue of material fact as to whether appellees actually exerted or attempted to exert undue influence over Naomi so as to replace her free agency with their own. *Martin*, 2004-Ohio-2520, at ¶ 22 (10th Dist.).

{¶ 29} Finally, appellants argue appellees failed to rebut the presumption of undue influence arising from David and Jeanne Fodor's confidential and fiduciary relationship with Naomi. Some Ohio appellate districts recognize a presumption of undue influence when there is a fiduciary or confidential relationship between the decedent and the beneficiary. *See Young v. Kaufman*, 2017-Ohio-9015, ¶ 55 (8th Dist.), citing *In re Estate of Kiefer*, 2017-Ohio-6997, ¶ 8 (2d Dist.); *In re Guardianship of Simmons*, 2003-Ohio-5416, ¶ 26 (6th Dist.). Courts recognizing a presumption of undue influence based on a confidential or fiduciary relationship have shifted "the burden of going forward with evidence" to the beneficiary accused of exercising undue influence in order to show their

conduct was free from undue influence. *Young* at ¶ 59, citing *Landin v. Lavrisiuk*, 2005-Ohio-4991, ¶ 23 (8th Dist.). The presumption is rebutted where the beneficiary presents evidence that "the donor acted voluntarily, in an exercise of his or her free will, with a full understanding of his or her actions and their consequences." *Id.*, citing *In re Guardianship of Simmons* at ¶ 26. Even where the presumption of undue influence arises, the burden of proving undue influence by clear and convincing evidence remains with the party attacking the transfer. *Id.*, quoting *Ament v. Reassure Am. Life Ins. Co.*, 2009-Ohio-36, ¶ 38, 40 (8th Dist.); *In re Estate of Eyrich*, 2016-Ohio-7165, ¶ 25 (11th Dist.), quoting *Estate of Niemi v. Niemi*, 2009-Ohio-2090, ¶ 38 (11th Dist.); Evid.R. 301 ("In all civil actions . . . a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of non-persuasion, which remains throughout the trial upon the party on whom it was originally cast.").

{¶ 30} This court has not specifically recognized a presumption of undue influence arising from a fiduciary or confidential relationship between the donor and beneficiary of a trust where the beneficiary did not, himself, draft the testamentary instrument. *Compare Krischbaum v. Dillon*, 58 Ohio St.3d 58 (1991), paragraph one of the syllabus (a presumption of undue influence arises when an attorney who is not related to the testator and actively participates in the preparation of a will is named as a beneficiary in the will); *In re Estate of Haas*, 2007-Ohio-7011, ¶ 39 (10th Dist.) (applying a presumption of undue influence to an inter vivos transfer shifting the burden of production to the recipient of the transfer to demonstrate proof of its fairness, but noting the ultimate burden of proving undue influence remained with the party challenging the transfer on the basis of undue influence).

{¶ 31} Assuming arguendo that such presumption arises in this case and that David and Jeanne Fodor were in a fiduciary or confidential relationship with Naomi, appellees satisfied their burden of producing evidence that Naomi acted voluntarily and free from undue influence. *See Fikes v. Estate of Fikes*, 2022-Ohio-2075, ¶ 12 (1st Dist.), citing *Kaufman* at ¶ 59. Appellees submitted their own affidavits averring they did not discuss the Fourth Amendment with Naomi or encourage her to change the beneficiaries to her trust. Mr. Kessler and Mr. Vorisek both averred Naomi was of sound mind and expressed

her own wishes. Mr. Kessler averred he confirmed Naomi's wishes during multiple phone calls before he drafted the Fourth Amendment. And Mr. Kessler and Ms. Kish both averred Naomi had testamentary capacity at the moment she executed the Fourth Amendment. Appellees' Civ.R. 56 evidence was sufficient to rebut a presumption of undue influence arising from any confidential relationship they had with Naomi, and the ultimate burden of persuasion remained with appellants to demonstrate a genuine issue of material fact concerning the elements of undue influence. *See Fikes* at ¶ 17 (sufficient evidence to rebut presumption of undue influence on motion for summary judgment, and summary judgment is appropriate where nonmoving party failed to introduce evidence creating an issue of material fact related to the actual or attempted exercise of undue influence). For the reasons stated above, appellants failed to point to any Civ.R. 56 evidence demonstrating a genuine issue of fact that appellees actually exerted or attempted to exert undue influence.

{¶ 32} In summation, though appellants argue the trial court erroneously weighed the evidence, summary judgment is appropriate here for a more fundamental reason: appellants failed to point to any evidence demonstrating a genuine issue of material fact remains as to whether appellees actually exerted or attempted to exert undue influence over Naomi related to the Fourth Amendment of the trust. Because appellants cannot satisfy their reciprocal burden of demonstrating a genuine issue of material fact remains, summary judgment in favor of appellees is appropriate. Therefore, the trial court did not err in granting appellees' motion for summary judgment. We overrule appellants' sole assignment of error.

## V. Disposition

{¶ 33} Based on the foregoing reasons, the trial court did not err in granting appellees' motion for summary judgment on appellants' claim of undue influence. Having overruled appellants' sole assignment of error, we affirm the judgment of the Franklin County Probate Court.

*Judgment affirmed.*

DORRIAN, J., concurs.
JAMISON, J., dissents.

JAMISON, J., dissenting.

{¶ 34} Because I would find that there is a presumption of undue influence that is a genuine issue of material fact and the majority does not, therefore, I respectfully dissent.

{¶ 35} I would find that there is a relationship that raises a presumption of undue influence. Particularly, where a challenger establishes a fiduciary or confidential relationship between the decedent and the beneficiary of a disputed transfer, Ohio law presumes undue influence and places the burden on the beneficiary to rebut it. *Foelsch v. Farson*, 2020-Ohio-1259, ¶ 17 (5th Dist.). Because "[w]here such a relationship exists, ' "the transfer is looked upon with some suspicion that undue influence may have been brought to bear on the donor by the donee." ' " *Id.*, quoting *Bayes v. Dornon*, 2015-Ohio-3053, ¶ 48 (2d Dist.), quoting *Studniewski v. Krzyzanowski*, 65 Ohio App.3d 628, 632 (6th Dist. 1989).

{¶ 36} " 'The determination of whether a relationship is a confidential relationship is a question of fact dependent upon the circumstances in each case.' " *In re Estate of Means v. Means*, 2025-Ohio-2564 (3d Dist.), quoting *Young v. Kaufman*, 2017-Ohio-9015, ¶ 58 (8th Dist.). "However, ' "[t]he holder of a power of attorney has a fiduciary relationship with his or her principal and is not required to have used the power of attorney for a confidential or fiduciary relationship to arise." ' " *Id.*, quoting *Thomas v. Delgado*, 2022-Ohio-4235, ¶ 28 (3d Dist.), quoting *Young* at ¶ 57. Further, "if a confidential relationship is found to have existed, there is a presumption that any transaction between [the decedent] and [the beneficiary] is invalid." (Further quotation marks deleted and citation omitted.) *Smith v. Gold-Kaplan*, 2014-Ohio-1424, ¶ 42 (8th Dist.)*, citing *Diamond v. Creager*, 2002-Ohio-916 (2d Dist.). "A 'fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *In re Estate of Kiefer*, 2017-Ohio-6997, ¶ 8 (2d Dist.), quoting *Stone v. Davis*, 66 Ohio St.2d 74, 78 (1981). *See also Ciszewski v. Kolaczewski*, 2013-Ohio-1765, ¶ 10 (9th Dist.), quoting *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 1996-Ohio-194, ¶ 36, quoting *In re Termination of Emp. of Pratt*, 40 Ohio St.2d 107, 115 (1974). " 'A "fiduciary" has been defined as ' "a person having a duty, created by his undertaking, to act *primarily for the benefit of another* in matters connected with his undertaking.' " ' " (Emphasis in original.) *State v. Massien*, 2010-Ohio-1864, ¶ 35,

quoting *Strock v. Pressnel*, 38 Ohio St.3d 207, 216 (1988), quoting *Haluka v. Baker*, 66 Ohio App. 308, 312 (9th Dist. 1941), quoting 1 Restatement of the Law, Agency, § 13, Comment a (1933).

{¶ 37} The presumption of undue influence arises because the law recognizes what common sense already knows: when one person has comprehensive control over another—financial, physical, social—the line between the dependent's decisions and the caregiver's wishes becomes dangerously thin. The majority decision seems to interpret the law to mean that a litigant must request the trial court to determine if there is a rebuttable presumption in the law before requiring litigants to provide evidence on that issue. I do not read the law this way. I would find that once a confidential relationship is established, "[t]he burden of going forward with evidence would then shift to [defendant] to show the absence of undue influence." *Thorp v. Cross*, 1998 Ohio App. LEXIS 4885, *14 (11th Dist. Oct. 16, 1998). "To overcome this presumption, the beneficiary must demonstrate by a preponderance of the evidence that the donor acted voluntarily, exercised their own free will, and fully understood their actions and the resulting consequences. [*Landin v. Lavrisiuk*, 2005-Ohio-4991 (8th Dist.)]; *Wall-Meiring v. Gibson*, [2023-Ohio-664, ¶ 43 (6th Dist.)]. Nevertheless, ' "the party attacking the transfer retains the ultimate burden of proving undue influence by clear and convincing evidence." ' *Young* at ¶ 59, quoting *Ament v. Reassure Am. Life Ins. Co.*, [2009-Ohio-36, ¶ 38 (8th Dist.)]. ' "Clear and convincing evidence" is more than a preponderance of the evidence, but does not rise to the level of certainty required by the beyond a reasonable doubt standard in criminal cases.' [*Ament*] at ¶ 52. 'It is that measure or degree of proof that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.' *Id.* However, '[b]ecause "the person who can give the best evidence is dead," most evidence of undue influence "will be circumstantial, leaving the factfinder to draw permissible inferences." ' *Id.*, quoting *Redman* [*v. Watch Tower Bible & Tract Soc. of Pennsylvania*, 1994-Ohio-514, ¶ 19]." *Means*, 2025-Ohio-2564, at ¶ 34, 35 (3d Dist.).

{¶ 38} I take no exception to the facts of the case therefore, I adopt the facts and procedural history as stated. However, I disagree with the majority decision to affirm the trial court's decision to grant summary judgment. The parties submitted competing affidavits that questioned testator's competence and deposition testimony, the attorney

testified that he had telephone conversations with the fiduciary about the contents of the will, appellee had a durable power of attorney and was a signatory on testator's bank account, and based upon the fact that testator was 96 years old and died within 3 months of executing the Fourth Amendment. Based upon the facts and evidence submitted, I would find that reasonable minds could reach more than one conclusion, therefore, a genuine issue of material fact exists.

{¶ 39} I would sustain appellants' sole assignment of error and remand for further proceedings. Therefore, I respectfully dissent.

————————————